We'll hear argument next in Case 16-54, Esquivel-Quintana v. Sessions. Mr. Fischer. Mr. Chief Justice, and may it please the Court, the key statutory term of the INA in this case is the word abuse. And the federal statute criminalizing sexual abuse of a minor, as well as the state statutes dealing with the same subject, dictate that sexual relations become abuse only on account of age, only when the younger partner in the activity is younger than 16. At the very least, the federal and state laws that I just mentioned dictate that California's statute is well outside of that which Congress would have expected. Kagan. I'm sorry, Mr. Fischer. You just said something that I think you did not say in your briefs, so let me ask you about that. You just gave us your definition of what the generic offense is, it's under 16. Because I understood in your briefs, you just said whatever the generic offense is, it doesn't include this activity. But do you have a definition of what the generic offense is? And if so, did you just say it? Justice Kagan, what we think is that if you want to give a definition for sexual abuse of a minor, at least in the context of the allegation of abuse being due to age, that 16 would be the appropriate cutoff. And we do say that in our reply brief in response to the government's point that, at least its argument, that you need to go further than we've argued in our blue brief. Kagan. Do you have any further views of what the generic offense is? Are there other elements of the generic offense that you're willing to tell us you think? I mean, usually in these cases, first we define the generic offense and then we see whether the State statute in question fits within that or doesn't. And so what is the generic offense? It's under 16. Anything else? Well, there are four elements, Justice Kagan. The word has to be sexual in nature, it has to be abuse, it has to involve a minor, and then presumably there's some mens rea involved. I think those are four elements. And so what we think is enough to decide this case, in fact, it's more than is necessary to decide this case, is to say when dealing with the element of abuse and the allegation is solely because of the ages of the partners engaging in sexual relations, you have abuse, then 16 should be the age of consent. Now, we didn't go that far in parts of our briefing because we don't think the Court has to go that far. In Duenas-Alvarez and other cases, our examples where the Court has said, we'll just look at a particular element and say that as long as the State statute falls outside of that element, that's enough. So you could decide this case by saying that the seven States that have laws like California's at issue here that draw the age of consent at 18 automatically fall outside of sexual abuse of a minor. And remember, even the seven States that have those laws, most of them are misdemeanors, and only one of those seven States calls that conduct abuse. Alitoso, suppose that there were no – that the definition here, the phrase here had no criminal application. So it applies purely in immigration, okay? And you're not asking us to overrule Chevron? No, no, no. All right. So why wouldn't this phrase, sexual abuse of a minor, be a phrase that is sufficiently ambiguous to justify Chevron? Now, in order to get around that, do you have to invoke something like the rule of lenity? No. We have other arguments, Justice Alito. So that is not an ambiguous phrase by itself, sexual abuse of a minor? Not in the way you've defined ambiguity, both in the categorical approach cases and for purposes of Chevron. So let me turn to those one by one. In the categorical approach cases, starting with Taylor, when the Court has confronted a generic crime without a specific cross-reference definition, what the Court has done is look across the sweep of State laws and Federal laws criminalizing that conduct. And in a case like Perrin, where there were 42 States that had a common core definition, the Court explicitly said in a footnote in that case there is no ambiguity involved in that situation, because we assume it's sufficiently clear that that's what Congress would have been intending to cover. Even if I didn't win that argument ---- Alito, do you think that if we look at this incredible array of State laws, it becomes clear what Congress intended by sexual abuse of a minor? We think yes for two reasons. One is because, remember, Justice Alito, in the very legislation this provision in the INA was enacted, Congress amended section 2243 of the criminal code that uses precisely the same language, sexual abuse of a minor. So there is a precise definition in Federal criminal law when Congress was criminalizing this conduct. So I think the Court could actually hold that is enough right there to find no ambiguity and to find a comprehensive definition. Kennedy, before you continue your answer and get into Chevron, why ---- suppose that there were ---- the Federal statute is the only one on the books. All the other State statutes are different. Would the Federal statute then control? I think that would be a harder case, Justice Kennedy. What you'd have to ask in that situation is, did you have an explicit or implicit cross-reference? Is there strong enough reason to believe in that hypothetical, that Congress was thinking of only the Federal version of the crime? I think there are strong reasons here to think that, for the reasons I was just describing. But this is the easy case, Justice Kennedy. This is a case ---- Kagan, but why would you think that, Mr. Fisher? I mean, there are ---- in this statute, there are loads of cross-references. And this one is not a cross-reference. So doesn't that tell us something? It's a ---- it's a canon, Justice Kagan. I will concede that. But the immigration defense brief at page 13 posits a theory as to why Congress may not have included a cross-reference here where it did other places, and it has to do with the jurisdictional nature of the element in the Federal crime. But even if you set that aside, what you have is one canon, and you have other canons. And another canon that's very strong to the Court's cases is when Congress uses the identical phrase, multiple places in the same legislation, we assume it meant the same thing. And so that would be my argument primarily as to why Congress here may well have been thinking of section 2243. But as I was just describing to Justice Kennedy, this is the easy case. This is the case where section 2243 and the State multi-jurisdictional survey plus the model penal code lead you to the exact same place. So it's enough in this case to say, at least where those two things line up, it is certainly the case that Congress would not have been intending to sweep in a State statute like the one involved here. You can leave for another day what might happen in a hypothetical statute like Justice Kennedy described or even on this statute if you had a situation where States covered certain conduct and treated it as abuse that falls outside of section 2243. Sotomayor, So what do we do with Chevron if we think it's ambiguous, that it's not clear? Fisherman If you think – I want to make sure I understand the question. If you think that the text is not clear for the reasons I've described so far, then you would go – Sotomayor Exactly. Or sufficiently unambiguous, to be clear. Fisherman Fair enough. Then what I think you would do is have one more set of questions you ask before you ask the traditional Chevron reasonableness questions. And that would be whether a traditional – another traditional canon of construction resolves the ambiguity. The Solicitor General acknowledges at page 42 of its brief that other clear statement rules in the Court's jurisprudence, like the presumption against preemption, the presumption against retroactivity, come before you get to agency deference. Likewise, here, there are two such canons. One is the rule of lenity, which Justice Alito mentioned. And we think for the reasons in Thompson Center Arms Company and more recently in the Abramski case, you would have a separation of powers problem by deferring on Chevron grounds to a statute like this one that applies both in the civil and criminal realm. And secondly, even if you set that aside, and I think that was Justice Alito's hypothetical, then you'd have the longstanding rule in immigration law, which predates Chevron by decades that says that deportation statutes, if they are ambiguous, should be construed in the favor of the non. Roberts. Roberts. You've always said, though, that the rule of lenity or at least most often said that the rule of lenity is something you apply when you've already exhausted the normal tools of statutory interpretation. So why is the order of battle the other way around? Why do you apply the rule of lenity before you get to Chevron? Fisherman. Well, I think you've said more or less the same thing in the Chevron context, Mr. Chief Justice. And the two things I would cite to you are, first, the Thompson Center Arms Company case, where the Court said we have an ambiguous statute and now we're going to turn to lenity, not to Chevron. And the reason why is because in Chevron itself, the Court said you exhaust all traditional canons because you assume Congress legislated against those canons. There is no more traditional canon of construction than the criminal rule of lenity. Roberts. I don't know how the two of them can coexist. I mean, on the one hand, you add in Chevron, you give the agency the broadest possible deference to interpret an ambiguous provision. And in the rule of lenity, you say, well, if it's ambiguous, you don't apply it as strictly as the government may be arguing. They each point in the opposite direction based on the same predicate, which is a degree of ambiguity in the statutory provision. Fisherman. Fisherman. I think that premise is correct and I think the Abramski case from just a couple of terms ago answers that problem by saying it would be a separation-of-powers violation to let the Executive define criminal statutes. Remember, we have a hybrid statute. Kagan is suggesting, Mr. Fisher, that if we turn Chevron off, we have to turn lenity on. Couldn't there be a middle ground between the two? In other words, some space where you say, because of this, the criminal application of this statute, we don't apply ordinary Chevron deference, but at the same time, we don't go straight into the kind of grievous ambiguity that triggers lenity. There's some middle area where the Court gets to decide just what it thinks is the best construction of the statute. Fisherman, It's hard for me to imagine exactly how that works, but I'm happy with the principle that the Court would. Kagan, It works if you think that ambiguity doesn't necessarily mean the same thing for Chevron purposes and for lenity purposes. The lenity purposes really demands grievous ambiguity, and but there's some sense in which there is a lack of clarity, a lack of clear meaning that allows the Court to decide what the best interpretation of the language is. Fisherman, So if that were the situation here, what I would tell the Court is, when you do that job as a court, you should take into account, for any ambiguity, the rule against construing deportation statutes against noncitizens, and more generally, what you should do is. Kagan, I don't really understand that, that canon, because that canon would suggest that we never give the BIA deference as to its interpretation of this statute. And in fact, when it comes to noncriminal things, we give the BIA very substantial deference. Fisherman, You have in other parts of the INA, Justice Kagan, but the Court has never deferred to the INA in terms of construing what an aggravated felony is for purposes of deportation. And in St. Cyr, the Court said that that canon applied in, with respect to, quote, deportation statutes. But even if you set that aside, and just, I would be more than happy for the Court to simply to ask what the best reading of this statute is on its own terms. Alito, could I take you back to the argument that Chevron isn't appropriate here because the definition applies in both the criminal and the civil context. And that was the point that Judge Sutton made in his dissent, and it has kind of a, it's an appealing argument when you say it fast, but the more I think of it, the less sense, the less sense it makes. Now, suppose that a, there's an ambiguous phrase in an immigration statute and it applies only in the civil, it applies only in immigration, it has no criminal, it has no criminal applications. And suppose that in that situation it would be appropriate to use Chevron, okay? And then later, Congress uses the same phrase in a criminal statute. Does that mean that the Chevron deference that was applied in the civil, previously in the civil context, goes away? I don't see anything odd about having the same phrase interpreted using a different methodology in a civil case and in a criminal case. Fisherman, I think it would go away, and, Justice Alito, I would just cite this Court's case law to you. Clark v. Martinez is the foremost example, but there's Thompson Center Arms Company, there are, as decades ago, FCC, ABC, and the Court has said over and over again that statutes are not chameleons. They have to be. Alito, but I would like to know why it makes sense, so something other than a citation of cases. Why would Chevron deference be appropriate up to the point where Congress decides to use the same phrase in a criminal statute and then it disappears? Because it would violate the separation of powers. Congress creates criminal statutes. Sotomayor, how does it – I'm having some of the difficulty that Justice Alito is having, but just last term we decided a Fair Labor Standards Act case involving car salesmen or car repairers. That was the dispute. In that act, a willful violation can be criminally prosecuted, and yet we gave def – we talked about Chevron as applying to that act and the Board's interpretation and sent it back for the Board to give us a proper reading of the statute or explain its reading. How many statutes, administrative statutes today, don't include a criminal sanction? In part or in whole? Almost all of them do. So where would Chevron be then? I'm not sure empirically that's correct. I think it's more of an unusual situation. But here's what I would say about the kinds of cases I think you're thinking of, Justice Sotomayor, where the Court hasn't even thought about this issue. And the reason why is because in those cases Congress has made it a crime to violate a regulation issued by whatever agency has control over that statute. So there Congress has defined the crime, which is violating a regulation. Here Congress – But most of the regulations are interpretations of the statute. That's right. But Congress has created the crime of violating the regulation. Just like if Congress says it's a crime to violate a court order and the court issues an order, the court isn't creating criminal law, Congress did. I don't want to hang my whole case on this Chevron question. No, but it is – but it's why I think people are discussing it, and I may have – you don't have to accept my view. I may be the only one with this view. But – and I'm curious to know what you actually think about it. You have cases here a lot. Chevron is not the tax code. We are not – it is not a rule of tax law. It is a general kind of standard which has judges asking what Congress would have thought about a question they never thought about, which is what kind of deference should a court give to an agency interpretation. And the answer will vary depending upon statute. I would not even give you this lecture. Were it not for the case that I believe this Court wrote this view into its opinion in Mead, which I think is pretty good law. And so if you're asking the question, what would a reasonable legislature think about that question which he never thought of, it's surprising to me that he would think prosecutors should have deference as to what the statute that they're prosecuting somebody under means, I would find that surprising. I would find surprising some aspects of immigration law where the result is just about as bad. The result is they leave without any discretion to keep them here, and then I'd proceed case by case. But I'm not asking what I think. I already know. I want to know what you think. Fisherman. What I think and what we're asking for today, if the Court reached the question, is for a very small exception to Chevron, a carve-out, to the extent it doesn't already exist in the Court's law. I think it already does exist, but if it didn't, it should. And that is where a statute has criminal applications and Congress has not delegated to the agency the authority to create crimes through its own regulatory process, Chevron is off limits. It would be a very small. Sotomayor I'm sorry, I'm still having a problem as to why that distinction is meaningful. Fisherman. The reason I most of the crimes that are set out in regulation almost largely parrot the statutory language and then explain what the agency means and it makes it a crime to violate the regulation, which is really the statute. It's a distinction without meaning for me. Fisherman. So two things about that situation, Justice Sotomayor. The first is, if you're just parroting the statutory language, you don't need Chevron at all. And the second answer is, if you get to the only thing that matters is where the agency is reading a statute under Chevron in a way that is not the better reading. And in that situation, almost all the examples. Sotomayor Well, that would make its reading unreasonable. Fisherman. That's right. Almost all the examples you're thinking of are ones where Congress has delegated the authority to create crimes through the regulatory process. Now, you don't have to reach that question in this case. For all the reasons I started with, the statute is unambiguously clear as the question presented in this case, that California's statute falls far outside of what Federal law, the sweep of State laws, the Model Penal Code define a sexual abuse of a minor. Even if you were going to ask the question under the traditional lens of Chevron, was the BIA analysis reasonable here, I think it's helpful to point out a few things. First is, the BIA in its definition of sexual abuse of a minor looked to a different Federal statute, Section 3509, which is a state which is a section about witness testimony. This goes back to the Rodriguez-Rodriguez case in 1999. The Solicitor General no longer defends that analysis. So the core of the BIA's reasoning that led it to where we are today is something that is not being defended anymore in this Court. So that's the first thing. The second thing is the BIA totally ignored the State-by-State sweep, just saying that the lack of a definition isn't enough in the statute itself. But that runs directly into the Taylor case, into Duenas-Alvarez, into all the other cases where the Court has said to define a generic crime, you start and see if there's an express definition. But if there isn't, that's when you do multijurisdictional surveys. And there's a very good reason. Ginsburg. And you say the multijurisdictional survey would yield age 16? Justice Ginsburg, there are two – there would be two possible answers to a multijurisdictional survey. The first and the easiest answer is that any State statute like California creating an 18 age of consent with a minor age differential, a very small age differential, would be well outside of the mainstream. And 43 States do not even criminalize the conduct at issue here, let alone make it a serious crime. Remember, we're asking at the end of the day whether something is an aggravated felony, not just whether it's criminal. You have an extraordinary case here where the Government is trying to deport somebody for committing something that isn't even a crime under Federal law or the vast majority of States. And, Justice Ginsburg, the second answer about a multijurisdictional survey, if you wanted to give more guidance or felt like the Solicitor General's argument that a more comprehensive definition is necessary was correct, would be the one I started with and I talked to Justice Kagan about, which would be when you're dealing with an allegation of abuse based on the ages alone, that 16 is the age of consent. And that is found in Federal law. It's found in the Model Penal Code. It's found in the sweep of State laws. And, Justice, this is what Judge Wilkinson did for the Fourth Circuit in Rangel-Castaneda, which is cited in our briefs, and we think that decision is correct. Even if you did what the Solicitor General asked you to do, which is ignore all of that and simply pick up Black's Law Dictionary, as we've shown in our reply brief, you end up in the same place. Because Black's Law Dictionary, when it defines sexual abuse, says that it we're talking about illegal sexual activity. And to define what is illegal, you have to ask what the age of consent is. And when you look in Black's Law Dictionary for the age of consent in this situation, you find the number 16. So this is, again, the very easy case where all roads are going to lead you to the same place, and you don't have any of the interpretive difficulties of the categorical approach that you normally have. In fact, there's one other way where this is an easier case than almost all categorical approaches cases that you see, and that's because the consequences here are so benign. The ordinary categorical approach situation involves a scenario, I think, where the Court is sometimes worried about, is that by virtue of the methodology, there will be some State statutes that are a little bit overbroad, and that people who have done some very bad things that the Federal law would consider to be aggravated felonies are going to get the benefit of the way the categorical approach works and not be subject to automatic removal. But here, that problem is taken care of in the State laws, in the States like California that have laws that reach up to 18, because as we've shown in footnote 1 of our reply brief, all of those States have other statutory provisions that are in line with the Federal law or very close to it. So really, all you are dealing with in this case is a few outlier or it's actually seven outlier statutes that go further than the Federal law and that have backup provisions that are going to still allow the Federal government to seek automatic removal or some other immigration remedy against people that commit sexual offenses against minors. Remember, the core of sexual abuse of a minor, I think, are things like child molestation and other really horrible things that nobody is even talking about here. The only issue in this case is how it applies to offenses like statutory rape. And we think working your way up to the Federal definition of statutory rape, when age alone is the only thing that justifies an allegation of abuse, is the right way to resolve that case and not go any further. The Federal government's definition, if I point out one more thing about it, it doesn't even track the BIAs. The Federal government's position, at least as I understand it, is that any sexual activity that's illegal is sexual abuse of a minor, as long as the younger participant is under 18. So under the Federal government's view, as I understand it, the two States that criminalize sex between two 17-year-olds would constitute an aggravated felony. Even though only two States do it, even though it is not commonly thought of in this country as abuse, and even though it is a misdemeanor in both of those situations. That's an extraordinary request out of this Court, and we think goes far, far, far beyond what Congress might have imagined when it was creating the sexual abuse of a minor subcategory. If there are any other questions about the presentation I've made thus far, I'm happy to answer them. Otherwise, I'd like to reserve the remainder of my time. Roberts. Thank you, counsel. Mr. Kedem. Mr. Chief Justice, and may it please the Court. Congress has charged the Attorney General with responsibility to administer the INA, to conduct removal proceedings, and to render controlling interpretations of the statute within those proceedings. In this case, the Board of Immigration Appeals exercised that authority in a manner both reasonable and consistent with the statute, and for that reason should be afforded deference. I think perhaps a good place to begin is where Petitioner's counsel began, with the idea of multi-jurisdictional surveys. First of all, by my count, there are roughly 13 cases in which this Court, under the categorical approach, was called upon to define or give meaning to a Federal provision so that the categorical approach could be applied to it. In only two of those cases, Taylor and Duenas-Alvarez, has the Court relied on something that could be compared to a multi-jurisdictional survey. In all of the other cases, the Court either didn't look at multi-jurisdictional surveys at all, or, as in Johnson, basically specifically rejected the relevance of those multi-jurisdictional surveys, saying that they would shed no light on the central inquiry. Kagan, you don't disagree, do you, with the premise that the first thing that we should do is to define the generic crime, is that right? That's correct. That's what we consider to be step one of the categorical approach. Okay. So you say that's step one, and then you say, well, you define the generic – in this case, you say the generic crime is whatever is illegal under State law. That's one of your – That's the first argument that we make in our brief. Yeah. So that seems to be, like, just not what generic crimes are. Sure. In other words, you're just saying, well, it's whatever the States consider illegal, when the whole idea of a generic crime is that it's not just anything that's illegal. It's the prototypical case, even though that differs from what some States do. Sure. A couple of responses. First of all, it's certainly not whatever States make illegal. It still has to have sexual content that's directed at a minor, namely someone under the age of 18. Yes, but you're carving out one element, which is the age element, and saying whatever a State does goes. So I thought that that was sort of the antithesis of the generic offense approach. I think not, because what we're dealing here is not one crime. What we're dealing here is an umbrella – is an umbrella term that applies to several different categories of crime. And I think it's maybe most analogous to the Court's Kawashima case, in which the definition, which didn't have a cross-reference, offenses involving fraud or deceit, which are sort of a broad category of different types of crimes. And to figure out what that means, the Court did not look to a multijurisdictional survey. It looked to the dictionary, to the context of the provision, to what it understood to be the purpose of the provision, and came up with a definition. Now, we are not going to look to Federal law itself, 2243a. We're told that in the final form, it's the same year as this provision. The same term, sexual abuse of a minor. A couple of thoughts about that provision. First of all, it was adopted more than a decade before the term sexual abuse of a minor was added to the INA's definition of aggravated felony. It has been amended a number of times, both before and after the amendment that added the aggravated felony of sexual abuse of a minor. And the Congress did not do what it did in a number of other provisions, which is to include a cross-reference. So if anything, I think the inference is that it did not want to tie the definition of sexual abuse of a minor to that provision. And Petitioner ---- Ginsburg-Young But you can pick up a definition from an evidentiary statute, a statute designed to protect children who testify in court. That seems a lot less close than 2243. So I don't think it's accurate to characterize the Board's decision as treating that as the definition. And I think if you look at the Board's opinion, what it said is that is a pretty common-sense definition for the type of activity that might be covered, but it didn't otherwise rely on it. And the Board's decision below relied instead on a practical construction of the word abuse, the sort of intuition that there are certain types of activity that even though they are ostensibly consensual, nevertheless, they contain the potential for harm or risk because of something about the relationship between the parties involved, either the ages of the parties involved or because there's a familial relationship, for instance, parent-child, or there's a relationship of authority or trust, something like a student-teacher. And what it said is when there's a meaningful age difference such that the perpetrator and victim are not in the same age group, as a result of that, the victim may not be able to protect themselves against certain risks, things like pregnancy or sexually transmitted diseases. And that was the basis. Ginsburg. But why isn't an 18-year-old in the same age group as a 21-year-old? I don't think we're dealing with 18-year-olds. I think in all instances, we're talking about people under the age of 18. What the Board said was that the age of 18 is not the typical age for an 18-year-old. It's really like a freshman in college going out with a junior in college. It is true that sometimes there are 17-year-olds who are in college. That's certainly not the typical instance. I think to a certain extent, we're dealing with a little bit of arbitrariness no matter where you draw the line. But if you draw the line as the Federal offense does, you essentially rule out statutes in almost all of the 50 States, because, first of all, there are 19 States that set the age of consent either at 18 or at 17. So you'd be ruling them out. And most of the remaining ones set the age differential at something less than 4 years. And that's before you get into questions about things like what about the mens rea. Do you have to know that the victim was of a certain age? Breyer, which I agree, but do I understand the situation correctly? In the mid-1990s, Congress passed a long immigration statute, which is this 1101A43, which lists about 30 or 40 crimes, and it says if the person has committed one of those, goodbye and the attorney general can't stop it. Is that right? It's right with this one caveat, which is that the definition of aggravated felony actually came much earlier and has been amended a number of times. Breyer, what happened at that time is they stuck in the words sexual abuse of a minor. That's correct. Okay. When they stuck in those words in this long list of crimes, some of which have cross references, and some of which, like in that very section, murder, rape, deceit, et cetera, do not, at the time they did that in 1996, I think it was 96 or maybe 95, there was on the books a Federal statute, which had been passed in 1986. And that Federal statute, by some amazing coincidence, which was a criminal law, is entitled Sexual Abuse of a Minor, and then it has a definition. So why not think that when they use the same word to do about the same thing, list a crime, they meant to pick up the same definition, QED, end of case, all right? Now, why not? First of all, if they intended to do so, it would have been very easy to do what they've done in other provisions, which is to include a cross reference. But beyond that. Obvious enough, I can list about 10 or 15, including deceit, rape, murder, a whole bunch in this statute which don't use cross references. Even Petitioner does not claim that sexual abuse of a minor is defined entirely by the bounds of the Federal provision, and they couldn't because it would lead to some absurd results. For instance, almost all States now, as they did in 1996, have statutes dealing with sexual offenses that are offenses because of a familial relationship or a relationship of trust or authority, such as student-teacher. None of those offenses are picked up by the Federal provision, and so you'd be disqualifying those as well. Kagan. Mr. Kedem, you have here, you have a Federal statute. You have the model penal code which goes the same way. You have 30 plus State laws. So at the least, am I right that you concede that you can't win unless Chevron applies? Is that correct? Kedem. No, certainly not. You think it's unambiguous, this kind of pragmatic construction about, what did you say, like power differentials? No, no, I'm sorry. I didn't mean to suggest that we would win because it's unambiguous that it means only the government's first argument. The point is simply that if you're going to interpret the words that Congress wrote, the interpretation that we put forward, we think, is a much more meaningful one than the one that Petitioners put forward to the extent that they even offer any. I guess I don't understand that. You're saying that it would be the clearly better reading to go to say, notwithstanding the Federal statute, notwithstanding 30-plus State statutes, notwithstanding the model penal code, we just know that when somebody talks about sexual abuse of a minor, they're talking about age 18 with a 3-year differential? So I think I would just step back to say that when this Court is giving content to the Federal provision at the first step of the categorical approach, it is engaging in a normal case of statutory interpretation, which brings to bear all of the normal tools. Kagan. So normally the Court So normal statutory interpretation get you to think that out of, like, out of our heads pops 18 plus a 3-year differential as opposed to looking at, as opposed to looking at 30-plus States, the model penal code, and the Federal statute. Which all define it differently. Sure. So first, with respect to all the different State laws, even in the two cases under the categorical approach where this Court has looked to multijurisdictional surveys, it did not apply Petitioner's methodology. In other words, it did not ask in Taylor whether second-degree burglary under Missouri law would have been criminal under the penal codes of 50 different States. And I think State surveys can be relevant only insofar as you think that they will tell you something about the words that Congress used. Alito I mean, this quest for the generic offense of sexual abuse of a minor seems to me to be a meaningless quest. There is no there there. It's not like burglary, where there is a common law definition, you've got some core. This is a phrase that doesn't have a common law counterpart, and if you look at all these State statutes and throw in all the Federal statutes that you can find that have some relation to this, what you have is a big array of very disparate statutes. So this seems to me like a classic example of Congress saying we have this category sexual abuse of a minor, and we know that there's all this array of State laws, and so you, Attorney General, define what should be within this for immigration purposes. Roberts We agree with that, Justice Alito. Before we turn to issues of Chevron and deference in general, I'd like to just identify Kagan Mr. Kedem, can I say that I think you disagree with two parts of that, because the first thing you said to me was that you agree that the first thing that has to be done is to define a generic offense. Alito That's correct. Kagan So Justice Alito was suggesting that in this case we shouldn't do that at all, so you disagree there. And then Justice Alito said in this case you just have to think, like, what does the BIA think about this? Alito Sure. Kagan But you said to me, even without deference, you win. So you're taking a very different view than Justice Alito is. You're saying that what the BIA interpretation was is the best understanding of the generic offense. Alito So maybe the best way to answer that question is to describe what the government thinks is the relationship between the two arguments that we make in the brief. The term sexual abuse of a minor would naturally support the interpretation that we offer in the first section of our brief to cover all sexual activity directed at a minor under the age of 18 years old. However, the Board has chosen a more modest interpretation based on a practical construction of the word abuse. And because the Board exercises the Attorney General's authority to interpret and give meaning to the statute, because it chose a definition that is both reasonable and consistent with the statute, this Court should defer because that is what Congress wanted. And so you are giving effect to what Congress has intended when you defer to the Board. But because Petitioner What about application of the rule of lenity? So I think application of the rule of lenity does coexist with Chevron in the following sense. I think, first of all, before the Board, the Board has recognized that lenity can come into play, but it is conceived of it in the same limited way that this Court has, namely, that you don't apply lenity simply because the statute can be read in more than one way. You apply it only when, after trying everything else, you simply have to throw up your hands because you cannot figure out what Congress wanted. There is a grievous ambiguity that simply cannot be resolved. Second So you necessarily apply Chevron before you apply the rule of lenity? I think that you do, but I think there is still work for lenity to do even after applying Chevron. Certainly, if the Board has spoken to the precise question at issue, then I think it would be hard for you to be left, at the end of the day, after giving that deference, with a grievous ambiguity. But often, agencies speak only to a related question or fill only part of a statutory gap, in which case, after giving appropriate deference to that answer, you would still possibly be left with a different aspect of the problem that you simply cannot resolve, in which case lenity would apply. But we don't think it makes sense to apply lenity at the first step of the category at the first step of Chevron, because at that step, the Court is asking, are the words sufficiently clear that there is really only one way to read them? And it doesn't make sense to apply a tie-breaking canon that says you only come into play at the end of the process after you simply cannot figure out what the words mean at all. And certainly, this Court has never applied lenity in that way at the first step of Chevron. Kennedy, I can understand Chevron in the context of an agency that has special expertise in regulating the environment or the Forest Service or fisheries or nuclear power. Why does the INS have any expertise in determining the meaning of a criminal statute? So, first of all, Justice Kennedy, I think it's important to orient ourselves around the fact that this is a civil statute that's being applied in a civil context. But I do agree with your point that it's not as if the agency can read a dictionary or look at legislative history any better than any court, certainly. And that's true of agencies generally. But when agencies give meaning to a statute, they bring to bear practical wisdom and experience in ways that are important. And, for instance, in this case, the Board of Immigration Appeals, first of all, decided that because there's so many so much variation among the different State offenses that are involved here, it made sense to apply an incremental approach to engage in case-by-case adjudication, rather than trying to cover the waterfront. Kennedy, but why is the INS any better positioned to make that determination than the American Bar Association or the Forest Service? So I think that the Board exercises delegated authority from the Attorney General who is administering the scheme in an administrative capacity. And I think to a certain extent, talking about Chevron deference, while accurate is actually a little bit misleading, because often when we're talking about Chevron, we're talking about the concept that when Congress gives an agency the power to engage in rulemaking or formal adjudication, we basically assume that that power comes along with the ability to interpret the statute, but it's a bit implicit. Breyer, what he's saying, I think what the question is, is this. There are many agencies, Social Security, that have statutes that are incredibly detailed and have to do rather directly with how this program is being administered. And they see some words over here in Part 1 on page 3,860, and they know, but we wouldn't know, that if you interpret it one way rather than another, it's going to be much harder to do the thing as a practical matter that they have over there on page 842. All right? They'll know that, we won't know. But you've just listed things that we seem to be able to know just as well as they. So, Justice Breyer, one thing to keep in mind is that the aggravated felony definition is a spine that runs throughout the INA and determines a whole range of administrative consequences, not merely whether a person is removable, but whether they're eligible, for instance, for cancellation of removal, asylum, certain detention consequences, voluntary departure, readmission. And in this case, we're dealing with a delegation of interpretive authority that is not merely implicit in the sort of general sense in which Chevron talked about it, but an express provision, 8 U.S.C. 1103, subsection A, which says that the Attorney General not only gets to conduct removal proceedings, but gets to render interpretations in those proceedings that are, quote, controlling. And this Court has relied in cases like Aguirre-Aguirre and Ngozi on that. Breyer. Okay. See, was there anything else? Because I asked my first question, which you probably don't remember now. But I wanted to know why don't you just look at 1143, that's the end of it, okay? And you said one, because there's no cross-reference, so I got that one. But you said two, two because if you go read the thing, 1140, is it 1143 or whatever? 2243. If I go read that, I'll see that there are things that couldn't possibly apply. That was your second. And I think you were going to make a third. Was there a third? I want to know. So if there was a third, it might have been that a 16-year age of consent and 4-year age differential would disqualify statutes from most States, certainly all of the States that sit a higher age of consent, but a number of the other States as well. If I could return just briefly to basically the questions I've gotten about whether this statute seems to be a bit of an outlier, and why not just rule out this statute, I think there are a few really serious problems with that. The first is that it would leave very patchy and meager coverage, because most State statutes are not continuous, meaning that they don't have one provision for 13-year-old minors, a different one for 14-year-old minors, and so on and so forth. They tend to clump them into age ranges, and Arizona is a good example of this. Arizona has one provision that covers minors ages 15 and up, a different provision that covers minors 14 and below. If this Court were to say that the 15-and-up provision is disqualified because it applies to 16- and 17-year-olds or because it has a 2-year age differential, that would leave only the 14-and-below provision, which means that a 15-year-old minor would get no coverage regardless of the age of the perpetrator. And it's not alone. There are other State statutes that are just like that, Virginia, North Dakota. Second of all, it's actually quite quite. Ginsburg. Well, that's a good reason to look to 2243. Well, 2243 would disqualify even more, because, again, it requires a 16-year-old age of consent, a 4-year age differential, and it includes a reasonable mistake of age defense that most States don't have. I think it's also actually quite difficult to determine what is or isn't an outlier. First of all, because State statutes differ on a range of different categories simultaneously. We focused on four of them, the age of the victim, the perpetrator, the age differential, and the offense conduct. But, again, there's a mens rea requirement that some States have and other States don't. Some require an element of sexual gratification that other States do not. Moreover, it's difficult enough when you're talking about current State statutes. You have to go to all of the criminal – go through all of the criminal code of Alabama, Arkansas, Arizona, and so on and so forth. And that's difficult because States don't label these crimes the same way. But it's possible because all States currently put those online. But as Petitioner has conceded, we're talking about State codes as they existed in 1996, which means to do that, you really have to go to the statute books. And Petitioner himself, for all his talk about how this is the required methodology, hasn't even performed that task for the statutes as they existed in 1996. Ginsburg-Your question about your interpretation, you interpret the word abusive to mean illegal. That is under the first argument that the government makes. It's – the term is not just abusive, it's sexual abuse, which has its own definition under the dictionary and its own understood meaning. And you – but you say that sexual abuse means illegal sexual conduct. Illegal sexual conduct usually, and the word minor added to the statutory provision, sort of reinforces that we're just talking about minors here. So in addition to the problems that I've just been discussing with this multijurisdictional survey and looking for outliers, it would also pull the Court into a number of very difficult line-drawing problems. For instance, what's the right numerical threshold? Is it 50 percent, two-thirds, three-quarters, something else? You also have to figure out how to deal with State populations. It seems somewhat anomalous to treat Wyoming's statute exactly the same as California's, even though California's statute applies to more than 50 times the population. You'd also have to figure out how to deal with defenses, the element of sexual gratification that some States have, and other things. Kagan.            Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. the BIA relied on, is that correct? I think the BIA itself relied on it only in a very general way. If you read the decision below. Okay, so the answer is no. What do you rely on? What are the sources that you rely on to generate this definition? Because you're not relying on the Federal statute. You're not relying on the most common State statutes. You're not relying on the other Federal statute that the BIA relied on. What are you relying on to generate this definition? So we treat this as an ordinary case of statutory interpretation. We rely on dictionary definitions, the legislative history. We rely on context of the provision. So the dictionary definition that you pull out is, illegal sex acts performed against a minor by a parent, guardian, relative, or acquaintance. Is that the one? That is. Yeah. But you're not using by a parent, guardian, relative, or acquaintance. Is that right? No, that's not right. It doesn't apply in this case, because we're dealing with a subset of those offenses, just dealing with someone who's a different age. But we would also think that it applies to familial relationship offenses. And I don't think Petitioner would disagree with that. No, no, no, no, but this limits it to those relationships. That's what this dictionary definition does. That's right, including an acquaintance, which I'm pretty sure Petitioner would have been in relation to his girlfriend at the time. Okay. Anything else? Dictionary definition? What else? We point to legislative history, which is relatively sparse, but I think strongly indicates that Congress wanted to get a lot tougher on crimes involving children and to context in which other INA provisions talk about minors as being people under the age of 18. What are those? So we cite two of them in the — in our brief. I don't have the citations at my fingertips.  The other ones, one deals with the rights of child witnesses, the other is a rule for calculating the duration of unlawful presence. That's right. Those are the two? Those are two. So those two, which really have nothing to do with the generic meaning of sexual abuse of a minor. That's correct. A single dictionary definition and some legislative history that even you indicate is sparse. I think that that's accurate. But if the Court engages in ordinary tools of statutory interpretation, those are the sources that usually it's relying on. It doesn't usually rely on multidimensional targets. Under your understanding, anything other than — if a stranger does anything to a minor other than commit a rape, then that would not be sexual abuse of a minor, because the person wouldn't be a relative or an acquaintance? I'm not sure I understand the question. I thought your definition was it had to be relative, parent-relative or acquaintance. Is that right? I think those are probably what it targets. I'm not sure that I would say that if someone isn't an acquaintance, it doesn't count. If the point is if somebody meets someone at a bar, doesn't even know them, and gets the person drunk, and they go home and they have sex, all right, that would sound much more like sexual abuse of a minor than a senior in college dating and living with a sophomore. Okay? So I take the point, I think it would apply in that case, being an acquaintance. But there is no acquaintance. But if I could turn to the question of deference in this case. I think Petitioner often raises separation of powers concerns, but doesn't actually explain why those come into play in this instance. And I think, let me give you the sort of doctrinal response that the government has and then the sort of more general response. The narrow doctrinal response is that for more than 100 years, this Court has upheld the statutory schemes that impose criminal consequences on decisions that are made by administrative agencies. Now, it may be that there are concerns under that about notice or concerns about delegation concerns, but Petitioner himself obviously has no notice problems here, given that we're talking about a core administration in the civil scheme, and that any criminal conduct that he might engage in in the future, he would have very clear notice that his prior State offense was an aggravated felony. Perhaps there would be someone in some hypothetical case who engaged in the offense conduct before the Board rendered its authoritative interpretation, and maybe they would have an as-applied due process challenge. But apart from that, we're not aware of notice concerns ever coming into play. Ginsburg. Ginsburg. Do you have the problem that somebody in another State did the same thing that this defendant was, this person was convicted of would be no crime in another State? So. Sure. That's true whenever you have the categorical approach. So for instance, in Kawashima, this Court dealt with a provision covering offenses involving fraud or deceit. It may be that there are certain of those offenses that apply in one State that don't apply in another State, and that's just a feature of the categorical approach. I also think there are a number of features of this case that distinguish it from maybe some of the more problematic criminal applications that the Court might have in mind. First of all, we're talking about a core INA provision. So if you're talking about which is the tail and which is the dog, in this case, the civil application is very much the dog. It is applied civilly thousands of times a year. The number of applications in the criminal context is vanishingly small. Second of all, we're talking here about an explicit delegation of interpretive authority, which is actually quite rare. It is rare that Congress says that an agency explicitly gets to render controlling interpretations of the statute. Furthermore, we're talking about only instances of further culpable conduct. It is not a violation of the Board's decision alone that gets you into criminal trouble. You have to engage in further conduct, and that conduct has its own culpability. And finally, all of the potential criminal consequences that we're talking about, these three statutes, are ones that come for people who are trying to violate and frustrate the civil scheme. So Section 1253 talks about people who are ordered to be removed but refuse to comply. Section 1326 talks about people who have been removed but then try illegally to reenter the country. And 1327 applies to people who try and illegally assist others who are entering the country. And so they're all directed at frustration of the core civil scheme. So that would be another way to distinguish this case from other more problematic instances. Finally, I think part of what the Court is reacting to, again, is the idea that drawing a line is very difficult and it's something that will be a little bit arbitrary no matter what. I think that's a strong reason to defer to the Board, because administrative agencies are actually quite good at drawing these sorts of lines, and conversely, they're sort of problematic for courts to do it. And there's a layer of political accountability that comes along when an agency does it, because if the agency puts the line in the wrong place, if they make it too strenuous or too lenient, then they can be held accountable for that. If the Court has no further questions. Roberts. Thank you, counsel. Mr. Fisher, seven minutes. Fisher. Thank you. I'd like to cover seven or four topics. Four topics. First, as to multijurisdictional surveys. The cases the government talks about where the Court has not conducted those kinds of surveys are cases where the Court did not have to define a generic offense. The two cases that the Court has had to do that are Taylor and in Duenas-Alvarez, and in both cases, they looked to multijurisdictional surveys. And it's especially surprising to see the government here criticizing multijurisdictional surveys, because that's precisely the approach the government asked this Court to adopt in Duenas-Alvarez, and the Court did unanimously. If I could just read one sentence of that opinion, because it's not just a multijurisdictional analysis, but it's conducting it in the precise manner we asked the Court to conduct it here. The Court says at page 191, to succeed, Duenas-Alvarez must show something special about California's version of the statute. That was a theft statute that criminalizes conduct that other States would not consider illegal. That's the question the Court posed at the government's behest and answered in Duenas-Alvarez, and that's the question we asked the Court to ask and answer here today. And for good reason. You don't just you need to have something that's replicable and something that's objective when you confront a provision that doesn't have an express definition. Imagine the person in his lawyer's office saying, should I plead guilt to this crime or the other crime? Which one is going to render me deportable? You can't imagine a defendant's lawyer conducting his PDEA duties and having to imagine what the BIA might come up with when it surveys family planning journals from 20 years ago and imagines the kinds of things the Assistant Attorney General was describing. And so there are good instrumental reasons for using multijurisdictional surveys. Finally, if you did end up in the situation the Assistant Attorney General would like you to believe exists here, but we think doesn't, but if there were a situation where you just had a scatterplot among the States and it were too difficult to find any common core, what you would do in that situation is what the Ninth Circuit in a leading opinion by Judge Kaczynski did in a case called Anderson, which is revert back to the Federal statute defining that Federal offense, the crime itself, where Congress acted like a criminal lawmaker and said, here's what we want to cover. Second, as to the topic of ruling out some State statutes, depending on what rule the Court would adopt here, we say for the reasons in footnote 1 of our reply brief that you actually don't have a serious problem with over-inclusiveness because, yes, there are some particular State laws that are going to get rendered not aggravated felonies. All of those States have laws dealing with 16-year-old or 15-year-old ages of consents or slightly younger, so you're still going to get the people that Congress most wanted the law to apply to. And just take an example like Georgia. It has a law making it a crime for anyone to have sex with somebody who's under 16, with no age differential at all. Even if you wanted to pick up the age differential in Section 2243, it still wouldn't be a problem in that State because Georgia has a second law making it a felony as opposed to a misdemeanor when there's a 4-year age differential. So you find this time and again in the State laws that you don't have a serious problem with consequences. Next, the Solicitor General talked about Section 2243, if you would adopt that definition, in leaving out things like familial abuse or abuse of authority and the like. Now, we agree, or at least our position is, that you don't have to answer that question. I think in all candor, that is the hard case. It's the one that falls outside of Section 2243 and the reason why you don't necessarily have to choose in this case. But there would be good reason to choose Section 2243 is because the structure of the BIA – I'm sorry, the structure of the INA has other provisions that make other things deportable offenses, most notably child abuse or crimes against moral turpitude. So the familial abuse, like my friend here is describing, would be picked up in a separate subsection of the INA. So you don't have to worry about that consequence either. And then finally, as to statutory construction and the rule of lenity, first I would say you don't have to reach that difficult question about how Chevron and the rule of lenity interact when it comes to hybrid statutes. I think if I understood the other side's argument, all it's down to is a Black's Law Dictionary citation primarily. And even that has its problems for the reasons Justice Alito pointed out, when to deal with people who are not acquaintances, and secondly, because even that provision itself uses the word illegal. And to make the word illegal have meaning, as Justice Kagan points out, you need to do, you turn to a different page in Black's Law Dictionary to find out when sex is illegal based on age, and it tells you that 16 is the age of consent. So even Black's Law Dictionary leads to where we would have the Court go, so the BIA's interpretation cannot possibly be reasonable. But if you did want to address or need to address the question of how Chevron and the rule of lenity interact, at the end of the day, the Solicitor General has to be arguing one of two things to this Court. Either their position has to be that statutes can be chameleons and mean one thing in the criminal side and a different thing in the civil side, and that would be in the teeth of many of this Court's cases. Or they have to be arguing that the BIA has the power to control, I'm sorry, to control what a statute means, not just in civil settings, but in criminal settings. And that would be a dramatic departure from anything the Court has ever held, at least where Congress hasn't delegated that power expressly to the agency to control not only civil applications, but also the scope of criminal law. If there's a problem with that, if you're troubled by that consequence, remember, Congress can always draft two separate statutes. At the end of the day, it's Congress's choice whether to have a statute apply in both settings. And I think it's reasonable to conclude that if Congress has a statute applying in both settings, it wants it, first of all, to mean the same thing, and second of all, it doesn't intend the agency to have power over that particular provision. If the Court has any questions about our approach or about what I've said, I'm happy to answer them. Otherwise, I'll submit the case. Thank you, Counsel. The case is submitted.